Hovanes Margarian, SBN 246359
hovanes@margarianlaw.com
Aleksey Sirotin, SBN 245081
aleksey@margarianlaw.com
THE MARGARIAN LAW FIRM
801 North Brand Boulevard, Suite 210
Glendale, California 91203
Telephone Number: (818) 553-1000
Facsimile Number: (818) 553-1005

Attorneys for Plaintiff,
ANZHELYA MAKARYAN

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANZHELYA MAKARYAN, an individual, on behalf of herself, as class representative for all others similarly situated, and the general public,<br><br>     Plaintiff,<br><br>vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation; AUDI AG, a German entity; and DOES 1 through 10, inclusive,<br><br>     Defendants. | Case No. 2:17-cv-05086-PA-KS<br><br>Hon. Percy Anderson<br><br>**PLAINTIFF ANZHELYA MAKARYAN'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with declarations of Anzhelya Makaryan, Hovanes Margarian, and Aleksey Sirotin]<br><br>Date: November 13, 2017<br>Time: 1:30 p.m.<br>Courtroom: 9A |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

   **PLEASE TAKE NOTICE** that on November 13, 2017 at 1:30 p.m., or as soon as thereafter this matter can be heard, in Courtroom 9A of the United States Court of the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012 Plaintiff Anzhelya Makaryan will move this Court under Fed. R. of Civ. Proc. 23 for an order certifying a plaintiff classes defined as follows:

   A. <u>National Class:</u> All persons within the United States who purchased or leased, or will purchase or lease from an authorized Audi dealer any Audi vehicle with a Start/Stop system manufactured by Audi AG and distributed by VWGA ("Class Vehicles"), on or after Defendants placed the Class Vehicles into the stream of commerce. Excluded from the National Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person. Also excluded is any trial judge who may preside over this case.

   B. <u>California Sub-Class:</u>  All members of the nationwide class that reside in the State of California.

   C. <u>California Consumer Sub-Class</u>: All members of the California Sub-Class that purchased/leased the Class Vehicles for personal, family, and household use.

   This Motion is made following several conferences of counsel pursuant to Local Rule 7 - 3. Counsel have held several meet and confer discussions as to this Motion and its substance. The parties were unable to come to a resolution of any of the issues raised by this Motion.

   This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in Support of Class Certification, the Declarations of Anzhelya Makaryan, Hovanes Margarian, and Aleksey Sirotin, the documents and exhibits submitted with such Declarations, all pleadings and papers on file in this matter, and the arguments of

1   counsel to be presented at the hearing on this Motion. Plaintiff believes that based on the

2   issues raised in this Motion and its importance in the overall prosecution of this case, oral

3   argument would be of assistance to the Court.

4   Dated:  October 12, 2017                THE MARGARIAN LAW FIRM

5

6                                           By: */s/ Hovanes Margarian*
                                                Hovanes Margarian
7                                               Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
ANZHELYA MAKARYAN V. VOLKSWAGEN GROUP OF AMERICA, INC., ET AL.

# TABLE OF CONTENTS

I.    PROCEDURAL SUMMARY OF THE ACTION. ..................................................1

II.   STATEMENT OF PREDOMINANT COMMON FACTS. .....................................2

    A.   The Start/Stop Defect...................................................................................2

    B.   The Class Vehicles ......................................................................................3

    C.   VWGA's Uniform Policy, Procedure, and Documentation ..............................3

        1.   Same Express and Implied Warranty for *All* Class Vehicles ........................3

        2.   Owner's Manuals of *All* Class Vehicles are Actively Concealed by VWGA3

        3.   VWGA's Alleged Disclosure of the Unintended Rolling is in the Owner's Manuals for *All* Class Vehicles ..................................................................4

III.  LEGAL STANDARD. ....................................................................................5

IV.   PROPOSED CLASS MEETS ALL REQUIREMENTS OF RULE 23(A). ................5

    A.   Numerosity ................................................................................................6

    B.   Commonality ..............................................................................................7

    C.   Typicality....................................................................................................9

    D.   Adequacy of Representation ......................................................................11

V.    CERTIFICATION IS WARRANTED UNDER RULE 23(B)(3)............................12

    A.   Common Questions Predominate Over Individual Questions.........................13

        1.   Common Questions Predominate on the Implied Warranty Claims ..........13

        2.   Common Questions Predominate on the UCL Claim...............................18

            a.   "Unlawful" Prong of UCL..................................................................18

            b.   "Fraudulent" Prong of UCL.................................................................18

            c.   "Unfair" Prong of UCL......................................................................20

        3.   Common Questions Predominate on the FAL Claim .................................21

        4.   Common Questions Predominate on the CLRA Claim ..............................22

      5.    Common Questions Predominate on the Common Law Fraud Claim ........ 23

**B.**    Class Action is Superior to Other Methods of Adjudication. ............................ 24

**VI.**   CONCLUSION. ....................................................................................................... 25

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF ANGELA MAKARYAN'S
MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

## CASES

*Aaronson v. Vital Pharmaceuticals, Inc.*
No. 09-CV-1333 W(CAB), 2010 WL 625337, at *5 (S.D. Cal. Feb. 17, 2010)...........16

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591, 623 (1997).................................................................13

*Armen Buniatyan v. Volkswagen Group of America, Inc.*
2:16-cv-00336-PA-KS (CACD) .............................................................6

*Armstrong v. Davis*
275 F.3d 849, 868 (9th Cir. 2001) .........................................................10

*Armstrong v. Davis*
275 F.3d 849, 872, n. 28 (9th Cir. 2001) ...................................................6

*Asghari v. Volkswagen Grp. of Am., Inc.*
(C.D. Cal. 2013) 42 F. Supp. 3d. 1306, 1338 ..............................................16

*Banks v. Nissan North America, Inc.*
*(N.D. Cal. 2013) 301 F.R.D. 327, 334*......................................................11

*Bardin v. Daimlerchrysler Corp.*
(2006) 136 Cal.App.4th 1255, 1273-1274 ...................................................20

*Barefield v. Chevron U.S.A. Inc.*
No. C 86-2427 TEH, 1987 U.S. Dist. LEXIS 15125, at *5 (N.D. Cal. Sept. 9, 1987) .10

*Berryman v. Merit Property Management, Inc.*
(2007) 152 Cal.App.4th 1544 ..............................................................18

*Blackie v. Barrack*
524 F.2d 891, 901 (9th Cir. 1975) .....................................................2, 5, 24

*Blackie v. Barrack*
524 F.2d 891, 901-02 ...................................................................5, 17

*Briseno v. ConAgra Foods, Inc.*
844 F.3d 1121, 1123 (9th Cir. 2017) ........................................................7

*Califano v. Yamasaki*
442 U.S. 682, 701-702 (1979) ...............................................................7

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*
(1999) 20 Cal.4th 163, 187 ................................................................21

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
20 Cal.4th 163,180 (1999) .................................................................18

*Chamberlan v. Ford Motor Co.*

223 F.R.D. 524, 526 (N.D. Cal. 2004)...........................................................8

*Chiarella v. U. S.*
(1980) 445 U.S. 222, 227–28................................................................23

*Cholakyan v. Mercedes-Benz USA, LLC*
(C.D. Cal. 2011) 796 F.Supp.2d 1220, 1242 ......................................15

*Daffin v. Ford Motor Co.*
458 F.3d 549, 553 (6th Cir. 2006) .......................................................10

*Day v. AT & T Corp.*
(1998) 63 Cal.App.4th 325, 332 ..........................................................21

*Ehrlich v. BMW NA, LLC*
801 F.Supp.2d 908, 919 (C.D. Cal. 2010) ...........................................20

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156, 177 (1974).......................................................................5

*Ellis v. Costco Wholesale Corp.*
657 F.3d 970, 984 (9th Cir. 2011) .........................................................9

*Evans v. IAC/Interactive Corp.*
244 F.R.D. 568, 578 (C.D. Cal. 2007)..................................................11

*Falk v. General Motors Corp.*
(N.D. Cal. 2007) 496 F.Supp.2d 1088, 1095 (N.D. Cal. 2007)............18

*Gable v. Land Rover N. Am., Inc.*
2011 WL 3563097, at *3 (C.D. Cal. July 25, 2011).............................5

*Galvan v. KDI Distrib., Inc.*
2011 U.S. Dist. LEXIS 127602, at *24-25 (C.D. Cal. October 25, 2011) ...................13

*Galvan v. KDI Distribution Inc.*
2011 WL 5116585 *3 (C.D. Cal., Oct. 25, 2011)..................................5

*Galvan v. KDI Distribution Inc.*
2011 WL 5116585, at *3 (C.D. Cal. Oct. 25, 2011)..............................6

*Greenman v. Yuba Power Prods.*
59 Cal.2d 57, 61, 27 (1963) .................................................................16

*Guido v. L'Oreal, USA, Inc.*
(C.D. Cal., July 1, 2013) 2013 WL 3353857, at *18............................7

*Hanlon v. Chrysler Corp.*
150 F.3d 1011, 1019 (9th Cir. 1998) ..............................6, 8, 9, 11, 12, 24

*Hanon v. Dataproducts Corp.*
976 F.2d 497, 509 ..................................................................................5

*In re Citric Acid Antitrust Litigation*
1996 WL655791, at *2 (N.D. Cal. Oct. 1996) ............................................ 5

*In re First State Alliance Mortg. Co.*
471 F.3d 977, 990 (9th Cir. 2006) ........................................................... 24

*In Re Steroid Hormone Cases*
181 Cal.App.4th 145, 157 (2010) ............................................................ 23

*In re Tobacco II Cases*
46 Cal.4th 298, 320 (2009) ............................................................... 20, 22

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and
Products Liability Litigation*
(C.D. Cal. 2010) 754 F.Supp.2d 1145, 1180 ........................................... 16

*In re Vioxx Class Cases*
180 Cal. App. 4th 116, 129 .................................................................... 23

*In re Vitamins Antitrust Litig.*
209 F.R.D. 251, 262 (D.D.C. 2002) ........................................................ 13

*In re Wells Faro Home Mortage Overtime Pay Litigation*
571 F.3d 953, 959 (9th Cir. 2009) ........................................................... 13

*Joint Equity Comm. of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real
Estate Corp.*
281 F.R.D. 422, 430 (C.D. Cal. 2012) ..................................................... 24

*Kamm v. Cal. City Dev. Co.*
509 F.2d 205, 211 (9th Cir. 1975) ........................................................... 13

*Lerwill v. Inflight Motion Pictures, Inc.*
582 F.2d 507, 512 (9th Cir. 1978) ........................................................... 11

*LiMandri v. Judkins*
(1997) 52 Cal.App.4th 326, 337) ...................................................... 19, 23

*Marilley v. Bonham*
2012 U.S. Dist. LEXIS 33678, at *23-24 (N.D. Cal. 2012) ....................... 11

*Mass. Mut. Life Ins. Co. v. Super. Ct.*
97 Cal.App.4th 1282, 1293-94 (2002) ............................................... 22, 23

*Mazza v. Am. Honda Motor Co.*
666 F.3d 581, 589 (9th Cir. 2012) ............................................................. 8

*McAdams v. Monier, Inc.*
182 Cal.App.4th 174, 191 (2010) ............................................................ 23

*McCabe v. Am. Honda Motor Co.*
100 Cal. App. 4th 1111, 1119 (2002) ........................................................ 2

*McCrary v. Elations Co., LLC*
2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) ...................................................7

*Menagerie Prods. v. Citisearch*
2009 WL 3770668, at *5 ..........................................................................................24

*Menagerie Prods. v. Citysearch*
No. CV 08-4263 CAS (FMO), 2009 WL 3770668, at *4 (C.D. Cal. Nov. 9, 2009) ......6

*Negrete v. Allianz Life Ins. Co.*
238 F.R.D. 482, 493 (C.D. Cal. 2006) .....................................................................17

*Parkinson v. Hyundai Motor America*
(C.D. Cal. 2008) 258 F.R.D. 580, 588 ......................................................................8

*Parsons v. Ryan*
754 F.3d 657, 675 (9th Cir. 2014.) ...........................................................................8

*Pha v. Yang*
No. 12-cv- 01580-TLN-DAD, 2014 U.S. Dist. LEXIS 22223, *10 (E.D. Cal. Feb. 19, 2014) ...........................................................................................................................10

*Pisano v. American Leasing*
(1983) 146 Cal.App.3d 194, 198 ..............................................................................15

*Ries v. Ariz. Beverages USA LLC*
287 F.R.D. 523, 537 (N.D. Cal. 2012).......................................................................8

*Rodriguez v. Hayes*
591 F.3d 1105, 1124 (9th Cir. 2010) .......................................................................10

*Smith v. Ford Motor Co.*
(N.D. Cal. 2010) 749 F.Supp.2d 980, 987 ...............................................................19

*Stearns v. Ticketmaster Corp.*
655 F.3d 1013, 1020 (9th Cir. 2011) ..................................................................20, 22

*Stuart v. Radioshack Corp.*
No. C-07-4499 EMC., 2009 WL 281941 (N.D. Cal. Feb. 5, 2009) ............................6

*Valentino v. Carter-Wallace, Inc.*
97 F.3d 1227, 1234–35 (9th Cir. 1996) ....................................................................24

*Vasquez v. Superior Court*
4 Cal. 3d 800, 814 (1971) .......................................................................................23

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338, 350-51, 131 S.Ct. 2541, 2551 (2011) .........................................5, 8, 12

*Wolin v. Jaguar Land Rover N. Am., LLC*
617 F.3d 1168 (9th Cir. 2010) ...................................................................8, 10, 11, 12

**STATUTES**

15 U.S.C. § 2310(e) ........................................................................17

15 U.S.C. § 2310(d)(1) ..................................................................14

*Bus. & Prof. Code, § 17500* ........................................................22

Cal. Civ. Code § 1770(a)(16) ........................................................23

Cal. Civ. Code § 1770(a)(5) ..........................................................22

Cal. Civ. Code § 1770(a)(9) ..........................................................23

Cal. Civ. Code § 1791 et seq. ........................................................14

Cal. U. Comm. Code §2314 ....................................................14, 15

**RULES**

Fed. R. of Civ. Proc. 23(a) ..........................................................5, 6

Fed. R. of Civ. Proc. 23(a)(1) ..........................................................6

Fed. R. of Civ. Proc. 23(a)(2) ..........................................................7

Fed. R. of Civ. Proc. 23(a)(3) ..........................................................9

Fed. R. of Civ. Proc. 23(a)(4) ........................................................11

Fed. R. of Civ. Proc. 23(b) ..............................................................5

Fed. R. of Civ. Proc. 23(b)(3) ..........................................12, 24, 25

Fed. R. of Civ. Proc. 23(g) ............................................................12

**TREATISES**

Newberg on Class Actions § 1:2 (5th ed.) ......................................5

## I.      PROCEDURAL SUMMARY OF ACTION:

The instant action was filed July 7, 2017. On July 14, 2017, the Summons and Complaint were served upon Defendant VWGA. [Dkt. Nos. 1 and 10]

Pursuant to L.R. 23-3, unless otherwise ordered by the Court, Makaryan's motion for class certification was due within 90 days from the service of the initial complaint, which is October 12, 2017. On August 17, 2017, the Parties filed a stipulation, requesting the Court to extend Makaryan's time to file a motion for class certification to 180 days *after* the date VWGoA serves its answer to the complaint. [Dkt. No. 16]

In their Stipulation, the Parties stated that they anticipated responses to the complaint that might be in the form of dispositive motions, there might be amendments to the complaint and the parties would be conducting discovery relating to the issue of class certification. The Parties also stressed the importance of filing a motion for class certification when all pleadings had been finalized and certification discovery had been completed. Parties noted that there had been no previous requests by Plaintiff for an extension of time in which to file her motion for class certification. [Dkt. No. 16]

On August 18, 2017, the day following the filing of the Parties' Stipulation, this Court denied the Stipulation, without discussion. [Dkt. No. 17]

On September 29, 2017, Makaryan filed an Ex Parte Application to Extend the Time to File the Motion for Class Certification. The Application argued that the 90-day deadline should be extended based on three main bases: that Plaintiff had not been able to conduct any class discovery necessary for the class certification motion, that the operative complaint was subject to a pending motion to dismiss and its legal sufficiency was not yet established, and that the overall schedule for the case had not yet been determined by the Court. Therefore, Plaintiff argued that filing of the motion for class certification by the October 12, 2017, deadline was not practicable, under FRCP Rule 23. The Application advised the Court that VWGA did not oppose the application or the extension requested. [Dkt. No. 21] Nevertheless, the Court denied the requested relief.

Because of the foregoing, Makaryan was not able to complete any discovery prior

1   to the due date for her motion for class certification. (Margarian Decl., ¶¶ 1 – 5)

2       Therefore, the facts in this Motion are limited primarily to the allegations in the

3   Complaint, with some additional evidence.

4   **II.   STATEMENT OF PREDOMINANT COMMON FACTS:** [1]

5       The following statement demonstrates that the claims of all Class Members who

6   have purchased or leased from an authorized Audi dealer an Audi vehicle with a

7   Start/Stop system manufactured by Audi AG and distributed by VWGA (the "Class

8   Vehicles") raise common questions of law and fact that are predominant in this action, so

9   that these claims can be tried through class adjudication.

10      **A. The Start/Stop Defect**

11      The Start/Stop System ("S/S") is a fuel-economizing feature present, *by definition*,

12  on all Class Vehicles, which automatically shuts off the engine when the vehicle is

13  stopped. The engine is supposed to restart automatically when the driver releases the

14  brake pedal. However, when during such stops, the driver's seat belt is removed, the

15  engine does not start. All the systems remain off and/or lose power, including such safety

16  features as power steering, electronic handbrake, and disc brakes. When on incline, the

17  vehicle rolls down the incline ("Unintended Rolling") [Compl. ¶ 4]

18      Because the alleged Unintended Rolling defect is one of design, *all* Class Vehicles

19  suffer from said defect. Plaintiff does not contend that the Unintended Rolling in

20  Plaintiff's vehicle is due to a manufacturing defect. Class Vehicles were not produced in

21  a substandard condition and are not different from one another. See, *McCabe v. Am.*

22  *Honda Motor Co.*, 100 Cal. App. 4th 1111, 1119 (2002). ("A manufacturing defect exists

23  when an item is produced in a substandard condition," which is shown if the product

24  "performed differently from other ostensibly identical units of the same product line.")

25  _____

26  [1] This summary is based on the allegations of the Complaint and the evidence gathered so
    far. The parties need not make an evidentiary showing on the merits, so long as the Court is
27  provided enough information to form a reasonable judgment on certification requirements.
    *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Plaintiff was unable to conduct
28  discovery because of LR 23-3's 90-day deadline that was not extended by the Court.

1    Given the allegations of a common rollaway design defect in Class Vehicles, and

2    no claims that Plaintiff's vehicle is produced differently from other Class Vehicles, it can

3    be certainly held that Plaintiff and Class Members suffered the *same* injury.

4    Therefore, this raises several common issues of law and fact applicable to all Class

5    Vehicles that are predominant in this matter: (1) whether the Unintended Rolling in Class

6    Vehicles renders those vehicles not fit for their ordinary purpose; (2) whether the

7    Unintended Rolling in Class Vehicles renders those vehicles not acceptable under trade;

8    and (3) whether the Unintended Rolling defect is material for a reasonable consumer.

9    **B. The Class Vehicles**

10    The Class Vehicles are Audi vehicle with an S/S manufactured by Audi AG and

11    distributed by VWGA and purchased or leased from an authorized Audi dealer. All Class

12    Vehicles, thus, are Audis, which *by definition*, (1) have an S/S fuel economizing system;

13    (2) were manufactured by Audi AG; (3) were distributed by VWGA; (4) were purchased

14    or leased from an authorized Audi dealer in the United States. The Class Vehicles, which

15    have these common features are in such numbers that it would be impossible to

16    adjudicate claims related to these vehicles on an individual basis.

17    **C. VWGA's Uniform Policy, Procedure, and Documentation**

18    1.    Same Express and Implied Warranty for *All* Class Vehicles

19    All Class Vehicles are covered by the same express warranty. The general terms of

20    the warranty are available at Audi's U.S. website: "Our New Vehicle Limited Warranty

21    is simple — four years or 50,000 miles, whichever occurs first." (Decl. Margarian, ¶ 6,

22    Ex. A). The Warranty Manual for Class Vehicles states that "Any implied warranty,

23    including any warranty of merchantability or warranty of fitness for a particular purpose,

24    is limited in duration to the stated period of these written warranties." [Dkt. No. 19 – 5]

25    2.    Owner's Manuals of *All* Class Vehicles Are Actively Concealed by VWGA

26    VWGA actively concealed the S/S defect by concealing owner's manuals of *all*

27    Class Vehicles from prospective consumers by limiting their access to the actual owners

28    and lessees of Class Vehicles. (Decl. Margarian, ¶ 7 – 10, Exhibits B - E)

Audi's U.S. website does not allow access to the owner's manuals of any of the Class Vehicles by prospective owners (Decl. Margarian, ¶ 7, Ex. B). Only the owners and the lessees of Class Vehicles can access the owner's manuals by registering or using the webpage www.audiusa.com/myaudi (Decl. Margarian, ¶ 8, Ex. C, Pg. 1). The Terms of Use of the My Audi portal limit the use of the portal to the owners and the lessees of Class Vehicles (Decl. Margarian, ¶ 9, Ex. D, pg. 2 – 3).

Even if the prospective owner tries to access the owner's manual of a Class Vehicle in violation of the My Audi portal's Terms of Use, he or she would not be able to do so, because Owner's Manuals of *all* Class Vehicles can only be accessed after entering the VIN (Vehicle Identification Number) of the specific vehicle (Decl. Margarian, ¶ 8, Ex. C, pg. 2). It is not possible to download or view any owner's manuals without inputting the VIN of a specific vehicle (Decl. Margarian, ¶ 10, Ex. E).

This raises several common issues of law and fact applicable to all Class Vehicles that are predominant in this matter: (1) whether VWGA intentionally denied access to the owner's manuals of Class Vehicles; (2) whether VWGA's acts of denying access to the owner's manuals is active concealment of the unintended rolling; (3) whether VWGA's active concealment of the unintended rolling created a duty to disclose the rollaway issue.

3.   VWGA's Alleged Disclosure of the Unintended Rolling Is in the Owner's Manuals for All Class Vehicles

VWGA argues that it disclosed the Unintended Rolling in the Owner's Manuals of Class Vehicles: "This claim also ignores that a website simply provides an overview of vehicle features and available options but is not intended to provide every conceivable detail of how each of those available features function. That information is, as a rule, provided in the Owner's Manual which here advised drivers to 'Press the brake pedal during a Stop phase to keep the vehicle from rolling.' Exhibit A, p. 82." [Dkt. No. 19, VWGA's Notice of Motion and Motion to Dismiss Complaint, at 16:8 – 19]

However, as stated above, the Owner's Manuals are not available to prospective purchasers and lessees of the Class Vehicles and were actively concealed from them.

-4-

1   Accordingly, one common issue applicable to all Class Vehicles predominant in

2   this matter is whether a disclosure of the unintended rolling in the Owner's Manuals that

3   were not available to prospective purchasers and lessees of Class Vehicles is valid.

### ARGUMENT

### III.   LEGAL STANDARD:

6   In ruling on a motion for class certification, the Court must determine whether the

7   moving party has shown that the Federal Rules of Civil Procedure, Rule 23 requirements

8   are satisfied. Subdivision 23(a) prescribes four prerequisites for maintaining a class

9   action – numerosity, commonality, typicality, and adequacy of representation – and

10   subdivision (b) sets forth four situations in which a class action is an appropriate

11   litigation device. A proposed class suit must meet *all* of the requirements of Rule 23(a)

12   and fit into *one* of the categories of Rule 23(b). Newberg on Class Actions § 1:2 (5th ed.)

13   In ruling on a class certification motion, the Court is required to presume that the

14   factual allegations of the Complaint can be proven at trial. *Blackie v. Barrack,* 524 F.2d

15   891, 901-02; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Galvan v. KDI*

16   *Distribution Inc*., 2011 WL 5116585 *3 (C.D. Cal., Oct. 25, 2011). A district court only

17   looks to the underlying merits of a plaintiff's claims to the extent that there is overlap

18   with the Rule 23 analysis. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350-51, 131

19   S.Ct. 2541, 2551 (2011) ("*Dukes*"); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509.

20   The court need only form a "reasonable judgment" on certification requirements

21   "[b]ecause the early resolution of the class certification question requires some degree of

22   speculation." *Gable v. Land Rover N. Am., Inc.,* 2011 WL 3563097, at *3 (C.D. Cal. July

23   25, 2011) (quoting *In re Citric Acid Antitrust Litigation*, 1996 WL655791, at *2 (N.D.

24   Cal. Oct. 1996) and *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).

### IV.   PROPOSED CLASSES MEET ALL REQUIREMENTS OF RULE 23(A)

26   The class must be so numerous that joinder of all members is impracticable, there

27   must be questions of law or fact common to the class, the claims of representatives must

28   be typical of the claims of the class, and the representative class must show that they

1    fairly and adequately protect the interests of the class. *Federal Rule Civ. Proc.* 23(a).

2    Rule 23 grants the Court "broad discretion to determine whether a class should be

3    certified, and to revisit that certification throughout the legal proceedings before the

4    court." *Galvan v. KDI Distribution Inc.,* 2011 WL 5116585, at *3 (C.D. Cal. Oct. 25,

5    2011) (citing *Armstrong v. Davis*, 275 F.3d 849, 872, n. 28 (9th Cir. 2001)). The Court

6    "need only form a 'reasonable judgment' on each certification requirement," taking the

7    complaint's allegations as true and declining to make merits determinations. *Id.*

8    In the instant case, as explained below, each requirement of Rule 23(a) —

9    numerosity, commonality, typicality and adequacy of class representation—has been met.

10   **A. Numerosity**

11   Rule 23(a)(1), which is often referred to as the "Numerousity" requirement, states

12   that the class should be "so numerous that joinder of all members is impracticable." *See*

13   *also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

14   While there is no minimum number required by Rule 23(a), forty members are

15   sufficient to satisfy the numerosity requirement. *Menagerie Prods. v. Citysearch*, No. CV

16   08-4263 CAS (FMO), 2009 WL 3770668, at *4 (C.D. Cal. Nov. 9, 2009) (*citing Stuart v.*

17   *Radioshack Corp.*, No. C-07-4499 EMC., 2009 WL 281941 (N.D. Cal. Feb. 5, 2009)

18   ("courts have found that numerosity is satisfied when class size exceeds 40 members")).

19   On January 15, 2016, in the Notice of Removal filed in a related case involving the

20   same putative classes, VWGA stated, "Based on currently available business records,

21   VWGoA estimates that it distributed at least 124,000 such vehicles for sale or lease in the

22   United States." *Armen Buniatyan v. Volkswagen Group of America, Inc.*, 2:16-cv-00336-

23   PA-KS (CACD). (Decl. Margarian, ¶ 11, Ex. F) Since more than a year and half has

24   passed, that number has increased. Thus, numerosity is established for the National Class.

25   Although state-by-state sales figures are currently unavailable, the share of the

26   population of California would readily support a finding of numerosity for the California

27   Sub-Class and California Consumer Sub-Class. Per the latest census figures (available at

28   www.census.gov), California has 12.1% of the U.S. population. Thus, the number of

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF ANZHELYA MAKARYAN'S
MOTION FOR CLASS CERTIFICATION

1  Class Vehicles sold California, is should be greater than 15,004 vehicles.

2       Joinder of all class members is impracticable given their number. If all Class

3  Members proceeded individually, the judicial system would have been flooded with

4  similar cases with identical issues of law and fact. This action, if certified, will solve this

5  problem because it "saves the resources of both the courts and the parties by permitting

6  an issue potentially affecting every [class member] to be litigated in an economical

7  fashion under Rule 23." *Califano v. Yamasaki,* 442 U.S. 682, 701-702 (1979).

8       Next, *some* courts interpreted Rule 23 to have an implicit "Ascertainability"

9  requirement, either as a standalone requirement or as part of the numerosity analysis. The

10 Ninth Circuit, however, held that Rule 23 does *not* have an "Ascertainability"

11 prerequisite to class certification, and that Rule 23's enumerated criteria already address

12 the policy concerns that have motivated some courts to adopt a separate "ascertainability"

13 requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017).

14      Nonetheless, here, the class definition allows the parties to readily identify the

15 Class Members through the sales records of VWGA. Plaintiff has defined the class based

16 on objective criteria: Audis with the S/S distributed from 2013-2017. [Compl. ¶¶ 44, 79.]

17      Purchase/lease of a product within a defined time period is sufficient to ascertain

18 the class. *See McCrary v. Elations Co., LLC,* 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13,

19 2014) (holding class was ascertainable because "the class definition clearly defines the

20 characteristics of a class member by providing a description of the allegedly offending

21 product and the eligible dates of purchase"); *Guido v. L'Oreal, USA, Inc.* (C.D. Cal., July

22 1, 2013) 2013 WL 3353857, at *18 (holding that class was sufficiently ascertainable

23 where "the requirement for membership in the class [was] whether a consumer purchased

24 a product after a particular date").

25      Thus, Plaintiff has met the numerosity requirement.

26 **B. Commonality**

27      Rule 23(a)(2) requires that "there are questions of law or fact common to the

28 class." Though the rule uses the word "questions," it has routinely been interpreted that

1    "So long as there is even a single common question, a would-be class can satisfy the

2    commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir.

3    2014.); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (in accord).

4         Through the years, Courts held that 'commonality' is not a quantitative, but a

5    qualitative requirement. As such, a common question "must be of such a nature that it is

6    capable of class-wide resolution—which means that the determination of its truth or

7    falsity will resolve an issue that is central to the validity of each of the claims in one

8    stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350, 131 S.Ct. 2541, 2551 (2011).

9         In *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168 (9th Cir. 2010), where

10   the Ninth Circuit addressed the certification of a class of purchasers of vehicles with an

11   alignment defect, the court found that plaintiffs "easily satisfy the commonality

12   requirement," because all of their claims "involve[d]," *inter alia*, "the same alleged

13   defect," "covered by the same warranty," which was "found in vehicles of the same make

14   and model." 617 F.3d at 1172. Such is the case here. Importantly, "variation among class

15   members in their motivation for purchasing the product, the factual circumstances behind

16   their purchase, or the price that they paid does not defeat the relatively 'minimal'

17   showing required to establish commonality." *Ries v. Ariz. Beverages USA LLC*, 287

18   F.R.D. 523, 537 (N.D. Cal. 2012) (citing *Hanlon*, 150 F.3d at 1020).

19        Here, there are common questions of law or fact across all of the Classes, including

20   whether VWGA knowingly sold vehicles that had a design defect that rendered the

21   vehicles prone to unintended rolling, creating the safety risks discussed herein. This

22   question is central to each cause of action Plaintiff alleges on behalf of the proposed

23   Classes she seeks to represent relating to VWGA's violations of consumer protection

24   laws. *See Parkinson v. Hyundai Motor America* (C.D. Cal. 2008) 258 F.R.D. 580, 588

25   ("In automobile defect cases, commonality is often found when the most significant

26   question concerns the existence of a defect.") (citing *Chamberlan v. Ford Motor Co.*, 223

27   F.R.D. 524, 526 (N.D. Cal. 2004)).

28        While here almost all questions of law and fact are common to the proposed

-8-

classes, there are several issues of law and fact that are central to the outcome of the case, such that the determination of truth and falsity will resolve an issue that is central to the validity of each [claim] in one stroke: (1) whether the Class Vehicles had a design defect that rendered them unduly susceptible to unintended rolling; (2) whether VWGA knew or should have known of the design defect; (3) whether VWGA had a duty to disclose the defect because of a known safety concern; (4) whether VWGA failed to disclose the defect; (5) whether Plaintiff and the other members of the proposed Classes were injured as a result of VWGA's failure to disclose the defect; and (6) whether Plaintiff and the other members of the proposed Classes are entitled to relief.

These common questions show that a class-wide proceeding has the capacity to provide the common answers that would resolve the case:  If VWGA did not have a duty to disclose the Unintended Rolling defect, then no Class Member would have any statutory or common law fraudulent concealment claims. If VWGA sufficiently disclosed the operation of the S/S in all owner's manuals of the Class Vehicles, then likewise, there is no concealment. If the trier of fact decides that the Unintended Rolling defect does not render the Class Vehicles unmerchantable, then no Class Member would have a breach of implied warranty claim against VWGA.

Thus, the commonality requirement is satisfied.

**C. Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Per the "permissive standards" of the Rule, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, *supra*, at 1020.

To meet the typicality requirement, Plaintiff must show that: (1) "other members have the same or similar injury"; (2) "the action is based on conduct which is not unique to the named plaintiffs"; and (3) "other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

Here, (1) Plaintiff pled that the Plaintiff and the Class were injured because they

paid for merchantable vehicles, but received unmerchantable ones. Furthermore, Plaintiff and the Class purchased vehicles with the same design defect that had been concealed by VWGA. (2) The claims of Plaintiff and Class are based on VWGA's nondisclosure of the Unintended Rolling defect, fraudulent concealment of the Unintended Rolling defect from its nationwide website and nationwide advertising materials; and from VWGA's conduct of distributing the unmerchantable vehicles. (3) Plaintiff and other Class members have been injured by the same course of conduct by VWGA.

Additionally, Defendant's three main defense arguments are typical both to the Plaintiff and the Class Members. Defendant claims that (i) the Unintended Rolling defect is not a defect but simply a design choice; (ii) the Unintended Rolling defect was disclosed in the owner's manual / there was no duty to disclose; (iii) the Unintended Rolling defect does not render the class vehicles unmerchantable. [See VWGA's Motion to Dismiss, Dkt. 19.] All these issues are typical to all members of the class since the primary focus is on VWGA's conduct and the nature of the defect.

"Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect." *Wolin*, 617 F.3d at 1175 (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006)). "[A] finding of commonality will ordinarily support a finding of typicality." *Pha v. Yang*, No. 12-cv- 01580-TLN-DAD, 2014 U.S. Dist. LEXIS 22223, *10 (E.D. Cal. Feb. 19, 2014) (quoting *Barefield v. Chevron U.S.A. Inc.*, No. C 86-2427 TEH, 1987 U.S. Dist. LEXIS 15125, at *5 (N.D. Cal. Sept. 9, 1987)).

There is nothing alleged in the Complaint that makes Plaintiff's claims different from the claims of the other Class members. [See Compl. ¶¶ 23-31.] Plaintiff's claims here are typical because they "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted)). Makaryan leased a Class Vehicle with a defective S/S, and the she will present common evidence, based on the same legal theories, to support her claims and the claims of the proposed Class Members (Decl. Makaryan ¶¶ 1;

4 – 5). *Wolin*, 617 F.3d at 1175 (plaintiffs were typical since, "they, like all prospective class members, were injured by a defective alignment geometry in the vehicles. [Named plaintiffs] and the class seek to recover pursuant to the same legal theories: violation of consumer protection laws, breach of warranty, and unjust enrichment."); *see also Banks v. Nissan North America, Inc. (N.D. Cal. 2013) 301 F.R.D. 327, 334*.

Consequently, the typicality requirement is satisfied.

## D. Adequacy of Representation

Rule 23(a)(4) requires that the representative party "fairly and adequately protect[s] the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is grounded in constitutional due process concerns: 'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Evans v. IAC/Interactive Corp*., 244 F.R.D. 568, 578 (C.D. Cal. 2007) (*quoting Hanlon* at 1020)

Representation is adequate if (1) the named plaintiffs and their counsel are able to prosecute the action vigorously and (2) the named plaintiffs do not have conflicting interests with the unnamed class members. *Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978)

Here, Plaintiff Makaryan is able to prosecute the action vigorously.  Plaintiff has been actively involved in this case from the outset, understands the nature of the allegations and the relief sought on behalf of the Class, is ready to respond to discovery, and is prepared to fulfill her duties to the Class (Decl. Makaryan ¶ 6).

Plaintiff's counsel, composed of Hovanes Margarian, Aleksey Sirotin, and other attorneys of The Margarian Law Firm, is a highly experienced counsel with significant experience in litigating class actions. (Decl. Margarian and Decl. Sirotin). *See Marilley v. Bonham*, 2012 U.S. Dist. LEXIS 33678, at *23-24 (N.D. Cal. 2012) ("In determining adequacy of proposed class counsel, a court must consider '(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel

1    will commit to representing the class.'" (quoting Fed. R. Civ. P. 23(g)(1)(A))).

2        Plaintiff's counsel has extensive experience in prosecuting actions involving

3    complex product defects and consumer fraud claims such as those at issue in this case

4    (Decl. Margarian, ¶ 12, Decl. Sirotin ¶¶ 3-4). Plaintiff's counsel has expended significant

5    time and money identifying, investigating and prosecuting the claims asserted. Plaintiff's

6    counsel is capable of, and has committed substantial resources to, representing the Class,

7    and is committed to vigorously prosecuting this action on the Class's behalf and thus has

8    the zeal and competence necessary to prosecute this action (Decl. Margarian, ¶ 12).

9    Counsel satisfies the Rule 23(g) factors and should be appointed as class counsel here.

10       Further, Plaintiff has no conflicting interests with the unnamed Class members.

11   The claims of each member arise under the same legal theories, and Plaintiff alleges that

12   she was harmed the same way as all other Class Members. Both have a strong interest in

13   establishing VWGA's liability, in having VWGA remedy those practices and ensuring

14   they comport with California and federal law. All Class members share interests both in

15   being recompensed for their losses and in deterring such conduct in the future. *See Wolin*

16   *v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010). Moreover, Plaintiff

17   specifically excluded any "personal injury or wrongful death claims" from the putative

18   Class. [See Compl. ¶ 78.] "Given these careful precautions and safeguards, no improper

19   conflict of interest existed which would deny absent class members adequate

20   representation." *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1021.

21       Because Makaryan has demonstrated the numerosity, commonality, typicality, and

22   adequacy requirements, she has satisfied the Rule 23(a) analysis.

23   **V.    CERTIFICATION IS WARRANTED UNDER RULE 23(B)(3)**

24       For certification under Rule 23(b)(3), common questions of law or fact must

25   predominate over questions that affect only individual members of the class, and a class

26   action must be found to be superior to other available methods of adjudication. *Federal*

27   *Rule Civ. Proc.* 23(b)(3); *see also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 346, 131

28   S.Ct. 2541, 2549 n.2 (2011).

1    "Subdivision (b)(3) encompasses those cases in which a class action would achieve
2    economies of time, effort, and expense, and promote uniformity of decision as to persons
3    similarly situated, without sacrificing procedural fairness or bringing about other
4    undesirable results." *Kamm v. Cal. City Dev.* Co., 509 F.2d 205, 211 (9th Cir. 1975)

### A. Common Questions Predominate Over Individual Questions.

6    "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are
7    sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.*
8    *Windsor*, 521 U.S. 591, 623 (1997).

9    "There is no definitive test for determining whether common issues predominate,
10   however, in general, predominance is met when there exists generalized evidence which
11   proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such
12   proof obviates the need to examine each class members' individual position." *Galvan v.*
13   *KDI Distrib., Inc.,* 2011 U.S. Dist. LEXIS 127602, at *24-25 (C.D. Cal. October 25,
14   2011) (*quoting In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)). The
15   concern is "the balance between individual and common issues." *In re Wells Faro Home*
16   *Mortage Overtime Pay Litigation,* 571 F.3d 953, 959 (9th Cir. 2009).

17   Here, common questions predominate because the evidence necessary to establish
18   Plaintiff's claims is common to Plaintiff and all members of the Class. Plaintiff will use
19   this common evidence to establish that VWGA had a duty to disclose the Unintended
20   Rolling defect, which poses a safety hazard; and that VWGA put unmerchantable
21   vehicles into the stream of commerce.

### 1.    Common Questions Predominate on the Implied Warranty Claims

23   This action involves implied warranty claims on three different statutory grounds:
24   the California Uniform Commercial Code (California Sub-Class), the Song-Beverly
25   Consumer Warranty Act (California Sub-Class), and the federal Magnuson-Moss
26   Warranty Act (Nationwide Class).

27   The breach of implied warranty of merchantability under California Uniform
28   Commercial Code requires the following: (1) Plaintiff bought a product from the

Defendant; (2) at the time of purchase, defendant was in the business of selling these goods; (3) the product was not the same quality as those generally accepted in trade <u>or</u> was not fit for the ordinary purposes for which such goods are used; (4) plaintiff took reasonable steps to notify defendant within a reasonable time that the product did not have the expected quality; (5) plaintiff was harmed; and (6) the failure to have the expected quality was a substantial factor in causing the harm. Judicial Council of California Civil Jury Instructions (CACI) 1231 (referencing Cal. U. Comm. Code §2314).

The breach of implied warranty of merchantability under California Song-Berly Consumer Warranty Act requires the following: (1) Plaintiff bought a consumer good from/manufactured by defendant; (2) at the time of purchase, defendant was in the business of selling consumer goods to retail buyers or manufacturing consumer goods; and (3) the consumer good was not of the same quality as those generally acceptable in the trade <u>or</u> was not fit for the ordinary purposes for which such goods are used. CACI 3210 (referencing Civil Code Sections 1791.1, 1792, and 1794). Thus, the elements of the two claims overlap in part. The Song-Berly, however, does *not* require the showing that plaintiff show notice of breach to defendant; that plaintiff was harmed; and that the beach was a substantial factor in causing the harm. Consequently, the predominance of these issues does not have to be considered as to Song-Berly Act claims.

For the federal Magnuson-Moss implied warranty claim, a plaintiff needs to show: (1) the problem of which Plaintiff complains existed when it left Defendant's control; (2) the defect made the vehicle unfit for the ordinary purpose such a vehicle is used; (3) the Plaintiff notified Defendant or its authorized dealer of the defect within a reasonable amount of time after discovering it; (4) that Defendant or its authorized dealer did not repair the vehicle after being given a reasonable number of attempts <u>or</u> did not offer to refund, replace or take other remedial action within a reasonable amount of time; (5) Plaintiff sustained damages; and (6) Plaintiff's damages were proximately caused by the vehicle being unfit for the ordinary purpose for which such vehicles are used. Illinois Pattern Jury Instructions – Civil 185.05. See 15 U.S.C. § 2310(d)(1). Thus, the federal

-14-

1    Magnuson-Moss claim elements overlap with those of the UCC claim, and may be

2    established by the same common evidence. [2]

3          Here, Plaintiff and the Class purchased or leased cars distributed by VWGA, as the

4    Class Vehicles, *by definition*, include only those distributed by VWGA. VWGA was in

5    the business of distribution the Class Vehicles at the time of their purchase or lease.

6    (Margarian Decl., Ex. F, ¶ 10) These two issues are entirely common to the Classes as

7    they concern the VWGA's line of business. Further, all Class Vehicles came with the

8    same express and implied warranties. (Margarian Decl., ¶ 6 Ex. A, and Dkt. No. 19 – 5)

9          Next, the issue whether the Class Vehicles were the same quality as those accepted

10   in the trade <u>or</u> whether they were not fit for the ordinary purposes for which such goods

11   are used is a common issue, which can be established by common evidence. Plaintiff

12   alleged that *all* the Class Vehicles have the same S/S that causes unintended rolling in

13   certain reasonably foreseeable circumstances. [Compl. ¶4] Whether said defective

14   condition renders Class Vehicles not the same quality as those accepted in trade or not fit

15   for their ordinary purpose is thus a common issue that can be tried by common proof.

16        Cal. C. Code §2314 is clear that "acceptance in the trade" and "fit for ordinary

17   purposes" are disjunctive standards. The determination of merchantability of the vehicle

18   under the "objection in the trade" prong is dependent on whether the Vehicle "complied

19   with the standards of quality which a purchaser would ordinarily be entitled to expect

20   when buying a new car of the same type." *Cholakyan v. Mercedes-Benz USA, LLC* (C.D.

21   Cal. 2011) 796 F.Supp.2d 1220, 1242. See also *Pisano v. American Leasing* (1983) 146

22   Cal.App.3d 194, 198 (holding that, in breach of implied warranty of merchantability

23   claims, "[c]rucial to the inquiry is *whether the product conformed to the standard*

24   *performance of like products used in the trade* [citations]. This determination may

25   depend on testimony of persons familiar with the industry standards and local practices

26   and is a *question of fact*." (Emphasis added.)) Plaintiff can use common evidence by

27

28   _____
     [2] The citation is to the Illinois Pattern Jury Instructions because there are no California jury
     instructions for Magnuson-Moss claims. The notice requirement is discussed separately.

comparing the S/S in the Class Vehicles with similar systems in other luxury vehicles, such as Mercedes-Benz and BMW, and show that those vehicles do not suffer from Unintended Rolling. [Compl. ¶ 58, 71.] Thus, Plaintiff will be able to show that the Class Vehicles do not comply with the standards of quality in the trade.

Under the second standard of merchantability, "fitness for the ordinary purpose" is shown if the product is "in safe condition and substantially free of defects." *Brand v. Hyundai Motor America* (2014) 226 Cal.App.4th 1538, 1546, *Asghari v. Volkswagen Grp. of Am., Inc.* (C.D. Cal. 2013) 42 F. Supp. 3d 1306, 1338. As explained above, the unintended rolling is caused by a *design* defect in the S/S, as such, it is a common issue of *all* the Class Vehicles. Therefore, to establish this element, no individualized inquiry would be needed. Plaintiff will use common evidence to show that the Class Vehicles, equipped with the S/S are *unsafe* because they are prone to unintended rolling, including the testimony of VWGA's Person(s) Most Knowledgeable and Plaintiff's expert witness.

The next issue (applicable only to UCC and Magnusson-Moss claims) is whether Plaintiff and the Class Members took reasonable steps to notify VWGA within a reasonable time that the product did not have the expected quality.

As to UCC, the district courts have applied the principle enunciated by the California Supreme Court that "this requirement is excused as to a manufacturer with which the purchaser did not deal. See *Greenman v. Yuba Power Prods.*, 59 Cal.2d 57, 61, 27 (1963) (notice not required to manufacturer in an action by purchasers 'against [a] manufacturer [ ] with whom they have not dealt.')." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation* (C.D. Cal. 2010) 754 F.Supp.2d 1145, 1180; see in accord, *Aaronson v. Vital Pharmaceuticals, Inc.*, No. 09-CV-1333 W(CAB), 2010 WL 625337, at *5 (S.D. Cal. Feb. 17, 2010) (denying motion to dismiss for failure to give § 2607(3)(A) notice). Thus, the Class Members will *not* have to show that each one gave separate notice to VWGA, and there is no need for individualized proof on this issue.

As to nationwide Magnusson-Moss Warranty Act claims, the act itself provides an

exception to the individualized notice requirement for the purpose of class actions. The Act provides that in class actions the notice by the named representative acting on behalf of the class will suffice for establishing the notice requirement (See, 15 U.S.C.A. § 2310(e), Class actions; conditions; procedures applicable). Consequently, this question is common to the class and would be whether Makaryan provided a notice on behalf of the Class and *not* whether each putative class member provided a notice.

Next, whether Plaintiff and the Class Members were harmed and whether failure to have the expected quality was a substantial factor in causing the harm (applicable only for the UCC and Magnusson-Moss claims) will also be established by common evidence. Plaintiff will use a common method of computation of the amount of damages due to the Class Vehicles' shared defective condition: measured by the difference at the time and place of acceptance between the value of the Class Vehicles accepted and the value they would have had if they had been as warranted. Where the amount of damages or restitution is subject to a formulaic calculation, common questions predominate. *See Blackie*, 524 F.2d at 905; *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 493 (C.D. Cal. 2006) (holding that for class certification, it is sufficient that plaintiffs show "a facially plausible method" for establishing proof of monetary relief on a class-wide basis).

To conclude, the common questions of law and fact that predominate the breach of implied warranty claims are: (1) whether VWGA is the distributor of Class Vehicles; (2) whether VWGA is in the business of distributing Class Vehicles; (3) whether the defect in the shared design of the S/S in the Class Vehicles rendered them not fit for their ordinary purpose; (4) whether the same defect rendered them to be not the same quality as those accepted in the trade; and (5) (for UCC and Magnusson-Moss only) whether the damages should be measured by the difference at the time and place of acceptance between the value of the Class Vehicles accepted and the value they would have had if they had been as warranted.

Because Plaintiff will use generalized evidence, which proves or disproves an issue or element on a simultaneous, class-wide basis, to establish the implied warranty claims,

1    she has shown that common questions predominate on these claims.

2        **2.    Common Questions Predominate on the UCL Claim**

3        The Unfair Competition Law ("UCL") protects consumers from any unlawful,

4    unfair or fraudulent business act or practice. The California Supreme Court confirmed

5    that the test for determining a violation of UCL is a disjunctive one; a plaintiff may show

6    that the acts or practices at issue are either unlawful or unfair or deceptive. *Cel-Tech*

7    *Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163,180 (1999).

8        a.    "Unlawful" Prong of UCL

9        "Under its 'unlawful' prong, the Unfair Competition Law (UCL) borrows

10   violations of other laws and makes those unlawful practices actionable under the UCL;

11   thus, a violation of another law is a predicate for stating a cause of action under the

12   UCL's unlawful prong." *Berryman v. Merit Property Management, Inc.* (2007) 152

13   Cal.App.4th 1544; see also *Cel-Tech*, *supra*, 20 Cal.4th at p. 180. Here, Plaintiff showed

14   she will establish claims for breach of implied warranties under various statutes, and a

15   violation of CLRA & FAL using common evidence. This will thus establish a UCL

16   violation under the "unlawful" prong even if only one of Plaintiff's other claims stands.

17       b.    "Fraudulent" Prong of UCL

18       As discussed above, the Unintended Rolling defect is common to *all* Class

19   Vehicles. Hence, the predominant common questions here are whether the Unintended

20   Rolling defect is a *material fact,* which VWGA had a duty to disclose, and whether

21   VWGA did disclose the Unintended Rolling.

22       "In order for the concealed fact to be "material," plaintiffs had to show that "'had

23   the omitted information been disclosed, one would have been aware of it and behaved

24   differently." *Wilson v. Hewlett-Packard Co.* (9th Cir. 2012) 668 F.3d 1136, 1142

25   "Materiality is viewed from the perspective of the reasonable consumer." *Falk v. General*

26   *Motors Corp.* (N.D. Cal. 2007) 496 F.Supp.2d 1088, 1095 (N.D. Cal. 2007). Since the

27   materiality of the Unintended Rolling is based on a "reasonable consumer" standard, it

28   will not require individualized proof of whether it was material for each purchaser and it

will be decided by a single decision whether the rollaway is a material fact or not.

A duty to disclose facts arises "(2) when the defendant had exclusive knowledge of *material facts* not known to the plaintiff; (3) when the defendant actively conceals a *material fact* from the plaintiff; [and/or] (4) when the defendant makes partial representations but also suppresses some *material facts*. *Smith v. Ford Motor Co.* (N.D. Cal. 2010) 749 F.Supp.2d 980, 987 (referencing *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 337)." (Emphasis added.)

Here, Plaintiff pled that VWGA had exclusive knowledge of the Unintended Rolling defect through seven sources of information, including road tests in Arizona and Alaska, technical training manuals, software code, service and repair manuals, other technical and informational materials provided by Audi AG which were not accessible to the public, Plaintiff and the Class. [Compl. ¶¶ 46-48.] Because Plaintiff alleges that all these facts predate the distribution of Class Vehicles, they would be proved by common evidence. Whether VWGA had exclusive knowledge of the Unintended Rolling defect in the S/S of the Class Vehicles pre-distribution and was obligated to disclose the defect, is thus, a common question as to all Class Members.

Another instance when a duty to disclose arises is when the defendant makes partial representations but also suppresses some *material facts*. Plaintiff alleges that throughout the distribution of the Class Vehicles VWGA represented on its website, marketing and advertisement materials that the "Start/Stop increases fuel economy and decreases vehicle emissions by turning off the engine during stops and turns it back on, but failed to disclose material facts about the Unintended Rolling defect, such as that nothing stops vehicles from rolling when the S/S does not restart the engine of the Class Vehicles contrary to VWGA's misrepresentations." [Compl. ¶ 53]

Further, Makaryan alleged that while VWGA advised in the owner's manual that the seat belt must be fastened for the S/S to operate, VWGA did not advise them that the vehicle would roll if the seat belt is not fastened and the driver releases the brake.

VWGA's position is that the Owner's Manuals adequately disclose the operation

-19-

1  of the S/S, including the Unintended Rolling [Motion to Dismiss, Dkt. 19, 3:11 – 17].

2      Plaintiff, however, discovered that VWGA actively concealed Owner's Manuals of

3  *all* Class Vehicles from *prospective* owners and lessees of Class Vehicles by limiting

4  their access to the *existing* owners and lessees of Class Vehicles. One cannot access an

5  Owner's Manual on the Audi web site without inputting the VIN of his vehicle

6  (Margarian Decl. ¶¶ 7 – 10, Exhibits B – E). Plaintiff will use this common evidence to

7  argue and prove that VWGA engaged in active concealment, which established its duty to

8  disclose. See, *In re Toyota Motor Corp. Unintended Acceleration Marketing*, Sales

9  Practices, and Products Liability Litigation (C.D. Cal. 2010) 754 F.Supp.2d 1145, 1192;

10  *Ehrlich v. BMW NA, LLC*, 801 F.Supp.2d 908, 919 (C.D. Cal. 2010).

11      VWGA, in contrast, attempts to use the statements in the Owner's Manuals to

12  show it disclosed the Unintended Rolling defect.

13      Consequently, both predominant issues of whether VWGA had a duty to disclose

14  the Unintended Rolling defect and whether VWGA disclosed the defect are common

15  issues of law and fact because they are dependent on the question whether the owner's

16  manuals were concealed from VWGA's nationwide website.

17      Finally, relief under the UCL and FAL "is available without individualized proof

18  of deception, reliance, and injury." *In re Tobacco II Cases,* 46 Cal.4th 298, 320 (2009).

19  Instead, the UCL and FAL implement an objective test requiring plaintiffs to "show that

20  members of the public are likely to be deceived" by the alleged misrepresentations or

21  omissions. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011).

22      Because of the above, it is clear that common questions predominate on the

23  "fraudulent" prong of the UCL.

24      c.    <u>"Unfair" Prong of the UCL</u>

25      California courts are split as to what constitutes an "unfair" practice in consumer

26  actions. See *Bardin v. Daimlerchrysler Corp.* (2006) 136 Cal.App.4th 1255, 1273-1274.

27      Under the *Cel-Tech* standard, for a business practice to be "unfair" in violation of

28  unfair competition law (UCL), the practice must be tethered to a legislatively declared

1    policy or have some actual or threatened impact on competition. *Cel-Tech*

2    *Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 187.

3            Here, the Complaint alleges that Plaintiff and the putative class members suffered

4    economic damage because they would not have purchased/leased the Class Vehicles had

5    they known Class Vehicles were equipped with the defective S/S and would have

6    purchased/leased a comparable vehicle from other luxury automakers such as Mercedes-

7    Benz or BMW instead, which have S/S but do not suffer from unintended rolling.

8    [Compl. ¶ 57, 58] Thus, common evidence will be used to show that Defendants' practice

9    in using the defective S/S in the Class Vehicles, and concealing its defective nature has a

10   direct impact on competition between VWGA and other car manufacturers and

11   distributors. Being deceived by VWGA's concealment, consumers are likely to purchase

12   or lease the Class Vehicles as opposed to Mercedes-Benz or BMW vehicles, giving

13   VWGA a competitive advantage. [Compl. ¶ 64]

14           Another test for an 'unfair practice' is a balancing test where "[a]n 'unfair' practice

15   under section 17200 is one 'whose harm to the victim outweighs its benefits.'" *Day v. AT*

16   *& T Corp.* (1998) 63 Cal.App.4th 325, 332. Under this test, common evidence will be

17   used to show that the harm of VWGA's practice of (1) selling thousands of vehicles with

18   defective S/S, without disclosing their defect [Compl. ¶ 53]; (2) systematically refusing

19   to repair the vehicles with defective S/S [Compl. ¶ 69]; (3) not documenting the visits of

20   consumers complaining about the defective S/S [Compl. ¶ 68]; and (4) distributing unsafe

21   and unmerchantable vehicles, outweighs any benefits to VWGA or to the society [Compl.

22   ¶ 75]. Common evidence, such as expert testimony, will be used to show the ease of

23   reprograming the Class Vehicles to address the unintended rolling defect.

24           To conclude, common questions predominate on all three prongs of the UCL.

25       **3.    Common Questions Predominate on the FAL Claim.**

26           The FAL makes it unlawful for any corporation "with intent directly or indirectly

27   to dispose of real or personal property [***], to make or disseminate or cause to be made

28   or disseminated before the public in this state, [***], in any newspaper or other

publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property [***], or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Bus. & Prof. Code, § 17500*

Because FAL focuses on the Defendant's unlawful act, relief "is available without individualized proof of deception, reliance, and injury." *In re Tobacco II Cases,* 46 Cal.4th 298, 320 (2009). FAL implements an objective test requiring plaintiffs to "show that members of the public are likely to be deceived" by the alleged statements. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011).

Further, FAL does not require any harm or a causal connection between the conduct and the harm (if any). Instead, it provides for penalties. See, *Bus. & Prof. Code, § 17500* ("Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.")

For these reasons, FAL does not require any individualized inquiries and allows common proof on all elements of the cause of action brought for its violation. Because FAL makes a practice unlawful, it is a predicate of a violation of UCL's unlawful prong.

### 4.      Common Question Predominate on the CLRA Claim.

Plaintiff's CLRA claim is similarly focused entirely on VWGA's conduct rather than any Class member's unique attributes. *See Mass. Mut. Life Ins. Co. v. Super. Ct.,* 97 Cal.App.4th 1282, 1293-94 (2002) (upholding certification of CLRA claim based on misrepresentations and material omission of facts by defendant); *Stearns*, 655 F.3d 1013, 1022. Under the CLRA, the primary issue is whether VWGA engaged in an "unfair or deceptive act or practice". Those acts or practices, if established, would violate at least Cal. Civ. Code §§ 1770(a)(5) (representing that the Class Vehicles have characteristics and benefits that they do not have); 1770(a)(7) (representing that the Class Vehicles are

1   of a particular standard, quality, or grade when they are not; 1770(a)(9) (advertising the

2   Class Vehicles with the intent not to sell them as advertised); and (a)(16) (representing

3   that the Class Vehicles have been supplied in accordance with previous representation

4   when they have not). "The ultimate question of whether the undisclosed information was

5   material [is] a common question of fact suitable for treatment in a class action." *Mass.*

6   *Mut.*, 97 Cal.App.4th at 1294. *See McAdams v. Monier, Inc*., 182 Cal.App.4th 174, 191

7   (2010); *In Re Steroid Hormone Cases*, 181 Cal.App.4th 145, 157 (2010).

8        Under the CLRA, "'[c]ausation, on a class[-]wide basis, may be established by

9   materiality. If the trial court finds that material misrepresentations have been made to the

10  entire class, an inference of reliance arises as to the class.'" *In re Vioxx Class Cases*, 180

11  Cal. App. 4th 116, 129. The standard for materiality is identical to the UCL's and FAL's

12  objective test. See *Steroid*, 181 Cal. App. 4th at 157. It follows that common questions

13  predominate on the CLRA claim, like on the UCL and FAL claims.

**5.    Common Questions Predominate on the Common Law Fraud Claim.**

15        Plaintiff's claim for Fraudulent Concealment is substantially similar to her claim

16  under the fraudulent prong of the UCL, but arises under common law and thus applies to

17  the nationwide class and not solely to the California Class. "At common law [***] one

18  who fails to disclose material information prior to the consummation of a transaction

19  commits fraud [***] when he is under a duty to do so." *Chiarella v. U. S.* (1980) 445

20  U.S. 222, 227–28. The same four circumstances apply in which nondisclosure or

21  concealment may constitute actionable fraud. *LiMandri v. Judkins*, 52 Cal. App. 4th 326,

22  336 (1997). As shown above, Plaintiff alleged and will establish three of these

23  circumstances in this action by common evidence.

24        Again, individual inquiries are not required because "if the trial court finds

25  material misrepresentations were made to the class members, at least an inference of

26  reliance would arise as to the entire class." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814

27  (1971). Here, it is Defendant's scheme of underlying concealment of the Unintended

28  Rolling defect, "not the details of any individual's experience that forms the nucleus of

-23-

the class claims." *Joint Equity Comm. of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 430 (C.D. Cal. 2012) (*quoting Menagerie Prods. v. Citisearch*, 2009 WL 3770668, at *5).

The Ninth Circuit further opined in *In re First State Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006), "[T]his court has followed an approach that favors class treatment of fraud claims stemming from a "common course of conduct." See *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975) ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions.").

Thus, predominance is satisfied as to Plaintiff's nationwide claim for fraudulent concealment.

**B. A Class Action Is Superior to Other Methods of Adjudication**

FRCP makes certification appropriate if Plaintiffs show class treatment "is superior to other available methods for fairly and efficiently adjudicating the controversy," *Fed. R. of Civ. Proc.* 23(b)(3). "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). This inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution. *Hanlon*, 150 F.3d at 1023. Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority analysis, which favor class certification here: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Under factors (A) and (C), there is no indication that the class members would have a strong interest in individual litigation. This action arises from an identical defect

in approximately 120,000 Audi branded vehicles which causes them to be prone to rollaway in certain conditions. The action is against the nationwide distributor and the manufacturer of Class Vehicles who caused the unmerchantable vehicles to be sold or leased in the United States without disclosing the dangerous design, which causes unintended rolling, and by actively concealing the material facts about the design causing the rollaway. One *sample* Class Member's case would thus be *identical* to the cases of all other Class Members. The trial of the same issues repeatedly as to each Class Member would be inefficient and may produce unfair results based on procedural rules and the difference in Courts and juries. There is no realistic alternative to adjudicate these 120,000 cases on individual basis and do so fairly. Under factor (B), there is no other pending litigation concerning the controversy in the instant case that would interfere with the claims of the putative class members [Dkt. 4]. Under factor (D), the class action would be manageable. Since proof in this action establishing the defect theory and VWGA's liability will come from VWGA, and little, if any, information would be required from the individual Class members, resolution of this action on a class-wide basis is manageable. Fed. R. Civ. Proc. 23(b)(3)(D). A detailed trial plan in the Margarian Decl., ¶¶ 13 – 15 demonstrates that the class action is manageable and summarizes in great detail how these claims can be litigated on a class-wide basis for establishing the defect theory, VWGA's liability, and appropriate remedies.

Thus, class action is superior method for fairly and efficiently deciding this matter.

## VI.   CONCLUSION

For the foregoing reasons this Court should certify this case to proceed as a Class Action and appoint Plaintiffs as the Class Representatives and the undersigned law firm as Class Counsel.

Dated:  October 12, 2017                          THE MARGARIAN LAW FIRM

By: */s/ Hovanes Margarian*
Hovanes Margarian
Attorneys for Plaintiff

-25-